HENDERSHOT & SMITH, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hendershot & Smith, Inc. v. Commissioner
Docket No. 8931-72.
United States Tax Court
T.C. Memo 1975-183; 1975 Tax Ct. Memo LEXIS 190; 34 T.C.M. (CCH) 788; T.C.M. (RIA) 750183; June 11, 1975, Filed H. Guy Hardy, for the petitioner. John P. Graham, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in petitioner's income tax as follows: Taxable year ended
Deficiency
June 30, 1969
$2,386.28
June 30, 1970
1,316.04 The sole question presented is whether section 267 (a)(2) [1] applies to the factual situation herein so as to disallow interest deductions claimed by petitioner. FINDINGS OF FACT Some of the facts have been stipulated and these facts are found accordingly. Petitioner, Hendershot & Smith, Inc., is an Ohio corporation having its principal place *192 of business in Wickliffe, Ohio. During the years in issue petitioner kept its books on the accrual method employing a fiscal year ending June 30. Corporate income tax returns were filed with the district director of internal revenue, Cleveland, Ohio, for each of these years. On November 5, 1968, petitioner's board of directors adopted the following resolution: RESOLVED, that the corporation purchase 232 common shares of the Corporation from Robert J. Hendershot at a purchase price of $508.29 per share, or an aggregate purchase price of $117,923.28; that the Treasurer execute and give to Robert J. Hendershot a check as of this date in the amount of $2,923.28 to apply against such aggregate purchase price; that the Treasurer is hereby authorized and directed to execute a cognovit promissory note of the corporation in the face amount of $115,000.00, providing for principal payments of $13,000.00 each January 1, beginning with the year 1970 and ending with the year 1977, with the balance of $11,000.00 to be payable on January 1, 1978, together with interest at the rate of 5% per annum, payable annually on January 1 on the unpaid balance; and the Treasurer is hereby authorized and directed *193 to retire and cancel such shares. Pursuant to this resolution, the 232 shares of common stock were redeemed in November 1968 and petitioner delivered to Robert J. Hendershot (hereinafter sometimes referred to as Robert), a calendar year cash method taxpayer, a check for $2,923.28 and a cognovit promissory note for $115,000. The note is set forth in the margin. [2] After the redemption, Robert ceased to be a shareholder of petitioner. He did, however, remain as a director and a vice president. *194 The ownership of petitioner's stock during the years in issue is set forth below: Relationship
Shares Owned
Shares Owned to Robert
Name
on 6-30-69
on 6-30-70
Brother
Harold Hendershot, Sr.
442
380
Brother
Walter Hendershot
80
87
Nephew
Harold Hendershot, Jr.
76
87
Nephew
James Hendershot
54
65
Nephew
Richard Hendershot
42
53
Niece
Nancy Collins
42
53
Son
John Hendershot
30
30
Sister-in-law
Helen Hendershot
2
13
Total shares outstanding
768
768
Petitioner's officers and directors during the years in issue were as follows: Chairman of the Board
Harold Hendershot, Sr.
President
Harold Hendershot, Jr.
Vice President
Robert J. Hendershot
Vice President
James Hendershot
Vice President
Richard Ross
Secretary
Walter Hendershot
Treasurer
Harold H. Hendershot
For the period January 1, 1969 through June 30, 1969, petitioner accrued interest in the amount of $2,875 on the promissory note issued to Robert and deducted this amount on its income tax return for the fiscal year ended June 30, 1969. For the period January 1, 1970, through June 30, 1970, interest was accrued in the amount of $2,550 *195 on the promissory note and petitioner deducted this amount on its income tax return for the fiscal year ended June 30, 1970. With respect to the years in issue petitioner made the following payments on the note by check to Robert: Date
Interest
Principal
January 2, 1970
$5,570
$13,000
January 4, 1971
5,100
13,000 The above payments were reported on Robert's income tax returns for the respective years 1970 and 1971. During the period in issue Robert had the authority to sign checks requiring only one signature on petitioner's commercial checking account with the Lake County National Bank of Painesville. At the end of each fiscal year in issue and during the 2-1/2 months immediately thereafter the balance on deposit in this account was in excess, on a majority of days, of the amount needed to pay the interest accrued on the note to Robert. In the notice of deficiency, respondent disallowed petitioner's deduction for accrued interest in the amounts of $2,875 and $2,550 for the respective fiscal years ended June 30, 1969 and June 30, 1970, stating that these amounts "were not paid within two and one-half months after the close of your taxable years, and *196 were not otherwise constructively received by Robert Hendershot during that time" as required by section 267. This case involves the applicability of section 267(a)(2) [3] to the factual situation herein. The major point of contention between the parties is whether there has been a constructive payment [4] within 2-1/2 months following the close of each fiscal year in issue. The question is purely one of fact. F. D. Bissett & Son, Inc.,56 T.C. 453 (1971). The parties are in agreement that all the other requirements requisite to the applicability of section 267(a)(2) have been met. *197 Petitioner's primary basis in claiming the inapplicability of section 267(a)(2) rests upon the allegation that Robert was in constructive receipt of the accrued interest within 2-1/2 months following the close of each fiscal year in issue even though payment was not in fact made until the following January of each fiscal year. It is submitted that even though the interest was not due nor paid [5] until January following the close of each fiscal year, it was in fact payable at any time after the accrual. Respondent, on the other hand, argues that the January 1 due dates, as set forth on the note and corporate resolution, impose a substantial limitation on payment, and that consequently there could be no constructive receipt by Robert within the 2-1/2 month period following the close of each fiscal year. Upon reviewing the record it is our opinion that there has been no constructive payment within the prescribed time period and that, therefore, respondent's determination must be sustained. *198 Compare Fetzer Refrigerator Co. v. United States,437 F. 2d 577 (C.A. 6., 1971), and F. D. Bissett & Son, Inc.,supra, with Young Door Co., Eastern Division,40 T.C. 890 (1963). [6]
In support of its contention petitioner points out the good relationship between Robert and the rest of the directors and officers, Robert's authority to write checks on petitioner's account, the ample balance in such account, and petitioner's president's stated willingness to have made the payments early if Robert had so requested. Petitioner's evidence only indicates that Robert had the power to receive payment. Petitioner had no duty to pay prior to the due date and Robert had no right to an early payment under the terms of the note. Without the right to receive income, there cannot be constructive receipt. F. D. Bissett & Son, Inc.,supra at 463. *199 While nothing in the evidence before us would have prevented an early payment, the fact remains that there was no early payment and no indication of any formal or informal authorization for such payment. Without such evidence we cannot find a constructive receipt. [7]
Petitioner further contends that since the January 1 due date was selected only as a matter of convenience we should give it little weight. This we cannot do. Petitioner has selected the due date and with respect to the years in issue its action was entirely consistent with such date. It is bound by its choice. Petitioner finally argues that the January 1 due date is the date the payment must be made, not the first date which it may be made. Be that as it may, section 267(a)(2) still requires a payment, either actual or constructive. The evidence *200 of this case clearly precludes the finding of a constructive payment. See section 1.451-2, Income Tax Regs. (footnote 4, supra.) Petitioner has also contended that Congress did not intend section 267(a)(2) to apply to the type of situation herein since there was no intention of tax manipulation. We have reviewed the relevant legislative history and find no merit to this contention. As we so recently stated in Kenneth Farmer Darrow, 64 T.C. , (May 14, 1975), (a case involving section 563): When the congressional language is so clear, arguments such as petitioner's are in effect requesting us to reqrite a section of the Code, an action we simply cannot take in the instant situation. In Summary, even though it has been shown that petitioner accrued the interest and that Robert had the authority to write checks on the company account, it has not been demonstrated that Robert had the right to draw the interest prior to the due dates. Petitioner did not issue the payments to Robert until the due dates with respect to the years in issue and no objective manifestation of any intent to allow early payment was presented to this Court. Petitioner's hypotheticals [8] cannot *201 supplant the reality of this situation. In this instance petitioner has fallen within the grasp of section 267(a)(2) which compels disallowance of the interest deductions. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. $115,000.00 COGNOVIT PROMISSORY NOTE
Cleveland, Ohio
November 5, 1968 For value received, the undersigned hereby promises to pay Robert J. Hendershot or order the sum of One Hundred Fifteen Thousand Dollars, with interest at the rate of 5% per annum payable on January 1 of each year on the unpaid balance hereof. Payments of principal shall be made according to the following schedule: January 1, 1970
$13,000.00
January 1, 1971
$13,000.00
January 1, 1972
$13,000.00
January 1, 1973
$13,000.00
January 1, 1974
$13,000.00
January 1, 1975
$13,000.00
January 1, 1976
$13,000.00
January 1, 1977
$13,000.00
January 1, 1978
$11,000.00
The payments made hereunder shall apply first on the accrued interest and second on principal. If any installment on this note be not paid when due, and within ten days after written notice that it is due and unpaid, then the entire unpaid principal hereof shall at once become due and payable, at the option of the holder hereof, and the undersigned does hereby authorize any Attorney at Law to appear for it in an action on the above note, at any time after said note becomes due, in any Court of record in Cuyahoga County, Ohio, to waive the issuing and service of process, and confess a judgment in favor of the legal holder of the above against it, for the amount that may then be due thereon, with interest at the rate therein mentioned, and costs of suit, and to waive and release all errors in said proceedings and the right of appeal from any judgment rendered. HENDERSHOT & SMITH, INC.
By ↩
3. SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS. (a) Deductions Disallowed.--No deduction shall be allowed-- * * * * *
(2) Unpaid expenses and interest.--In respect of expenses, otherwise deductible under section 162 or 212, or of interest, otherwise deductible under section 163,-- (A) If within the period consisting of the taxable year of the taxpayer and 2-1/2 months after the close thereof (i) such expenses or interest are not paid, and (ii) the amount thereof is not includible in the gross income of the person to whom the payment is to be made; and (B) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and (C) If, at the close of the taxable year of the taxpayer or at any time within 2-1/2 months thereafter, both the taxpayer and the person to whom the payment is to be made are persons specified within any one of the paragraphs of subsection (b). (b) Relationships.--The persons referred to in subsection (a) are: * * * * *
(2) An individual and a corporation more than 50 percent in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual; * * * * *
(c) Constructive Ownership of Stock.-- For purposes of determining, in applying subsection (b), the ownership of stock-- * * * * *
(2) An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family; * * * * *
(4) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; * * * ↩
4. See sec. 1.267(a)-1(b)(1)(iii), Income Tax Regs., which provides as follows: (iii) If, within the taxpayer's taxable year within which such items are accrued by the taxpayer and 2-1/2 months after the close thereof, the amount of such items is not paid and the amount of such items is not otherwise (under the rules of constructive receipt) includible in the gross income of the payee. Constructive receipt guidelines are set forth in sec. 1, 451-2, Income Tax Regs., which provide in part: (a) General Rule.↩ Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. Thus, if a corporation credits its employees with bonus stock, but the stock is not available to such employees until some future date, the mere crediting on the books of the corporation does not constitute receipt. * * *
5. We note that with respect to years subsequent to the years in issue petitioner was apprised of the section 267 problem and consequently made the interest payments within the 2-1/2 month period.↩
6. Contrary to petitioner's assertion, we do not believe that the Sixth Circuit (to which an appeal would lie) has viewed unfavorably Young Door Co., Eastern Division,supra.↩ In any event, the issue herein is purely factual; each case must be decided upon its own merits.
7. Although we note that the accrued interest may have been credited on petitioner's books to Robert, there is no evidence that he had a right to draw this amount out prior to the January 1 due dates. Petitioner's books were not produced at trial. However, there was testimony indicating that the interest was accrued on the books and designated as for Robert.↩
8. E.G., as alluded to previously, petitioner's president, during his testimony, hypothesized that if Robert had requested early payment, petitioner would↩ have been willing to make it.